```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

UNITED STATES OF AMERICA,   *

    Plaintiff,

        v.                  CRIMINAL NO.: WDQ-11-0540

RODNEY R. HAILEY,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Rodney Hailey was convicted of wire fraud, money laundering, and other crimes. For the following reasons, the government's motions for a writ of entry and preliminary forfeiture order will be granted with modifications.

I.  Background

On June 25, 2012, Hailey was convicted after a six-day jury trial of eight counts of fraud, in violation of 18 U.S.C. § 1343, 32 counts of money laundering, in violation of 18 U.S.C. § 1957, and two counts of violating the Clean Air Act, 42 U.S.C. § 7413(c)(2)(A). ECF No. 109.[1] The evidence was that Hailey's company, Clean Green Fuel ("Clean Green"), was registered with the Environmental Protection Agency ("EPA") as a bio-fuel

---

[1] Hailey was originally charged with five counts of violating the Clean Air Act. See ECF No. 19 at 16. On May 22, 2012, the Court granted the government's motion to dismiss three of those counts. ECF No. 66.

producer. Clean Green sold more than 32 million fake renewable fuel credit identification numbers ("RIN") to brokers and oil companies,[2] for more than $9 million. Hailey caused several banks to make wire transfers to Clean Green's account by making false representations and promises about the fake RINs. Hailey used the profits from his scheme to buy luxury cars, trucks, real property, and jewelry.

At trial, the government presented evidence of 41 RIN transactions between September 14, 2009, and December 21, 2010, for which Hailey sold 35,656,125 RINs, received $9,128,375.11, and produced no bio-fuel. ECF No. 116-1 at 4 (Gov't's Ex. 172). Detective and Case Agent Michael Aiosa testified that he investigated the fraud and confirmed the 41 transactions. He also testified that the proceeds of the RIN sales were wired to or deposited in Hailey's primary bank account at M&T Bank, which had an account number ending in ***9901 ("the ***9901 account"). Agent Aiosa said that, on September 14, 2009, when Hailey received the first payment for fraudulent RINs, the balance in the ***9901 account was negative. All subsequent deposits into the ***9901 account, and into 12 other M&T Bank accounts

---

[2] The Clean Air Act and the Energy Policy Act require companies that market petroleum products in the United States to either produce a certain amount of renewable fuel or buy from renewable fuel producers RINs for an equivalent amount of renewable fuels. ECF No. 19 at 2.

2

associated with Hailey, came from the RIN sales or from the resale of items purchased with RIN sale proceeds, except for $61,655, which came from Hailey's wife Tracey Oliver Hailey's employer. See ECF No. 116-1 (Gov't's Exs. 170, 171, 174). Hailey deposited $9,583,030 into the 13 accounts.[3] ECF No. 171.

Agent Aiosa also testified that he examined expenditures from Hailey's 13 accounts. See Gov't's Ex. 177.[4] He presented tables categorizing the disbursements and noting the recipient of each payment, but did not identify the assets purchased, other than the 32 assets which were the subjects of the money laundering charges.[5] See id. Exhibit 177 details thousands of transactions. See id. Aiosa's investigation revealed that Hailey disbursed $9,537,770.80 from the 13 accounts between September 14, 2009 and May 18, 2011. Id. at 1 (summary page).

---

[3] Including the $61,655 from Mrs. Hailey's employer and $393,000 from the resale of assets bought with RIN proceeds. ECF No. 171.

[4] The government submitted the original exhibit to Chambers, rather than filing it electronically. It should retrieve Exhibit 177 from Chambers 3A in the next two weeks.

[5] For example, in the "cars" category, Aiosa noted that on March 22, 2010, Ameri Credit deposited a check drawn on the ***9901 account for $18,214.29, but did not identify, in Exhibit 177, what Hailey bought for $18,214.29.

The jury found Hailey guilty on the (charged) wire fraud based on the transactions.[6] ECF No. 109 at 1-2. It also found Hailey guilty of money laundering when he transferred the proceeds of the sales from one bank account to another, then purchased the following assets with money from those accounts:

| Count | Date | Asset | Amount |
|---|---|---|---|
| 9 | 2/25/2010 | 2010 Nissan Armada | $49,099.96 |
| 10 | 4/19/2010 | 2005 BMW 645 and 2006 Chevrolet Impala | $53,539.38 |
| 11 | 4/27/2010 | 2008 Mercedes Benz S550 | $76,568.94 |
| 12 | 5/3/2010 | 2005 BMW 645 and 2007 Cadillac Escalade | $64,261.91 |
| 13 | 5/4/2010 | 2008 Mercedes Benz S550 | $63,421.82 |
| 14 | 5/5/2010 | 2007 BMW 650IC | $61,124.04 |
| 15 | 5/7/2010 | 2007 BMW M6 | $69,849.82 |
| 16 | 5/7/2010 | 2006 BMW 650IC | $42,772.82 |
| 17 | 5/12/2010 | 2007 Cadillac Escalade | $37,638.67 |
| 18 | 5/21/2010 | 2005 BMW 645CI | $44,549.82 |
| 19 | 5/28/2010 | 2005 Rolls Royce Phantom | $149,504.95 |
| 20 | 6/3/2010 | 10801 Catron Road, Perry Hall, MD | $634,139.00 |
| 21 | 6/9/2010 | 2007 Lamborghini Murcielago | $237,781.75 |
| 22 | 7/6/2010 | 2011 Ford F250 King Ranch and 2011 Ford F250 | $118,191.00 |
| 23 | 7/19/2010 | 2007 Cadillac Escalade | $39,796.88 |
| 24 | 7/20/2010 | 2009 Ferrari F430FB | $206,610.55 |
| 25 | 7/30/2010 | 9149 Rexis Ave., Perry Hall, MD | $294,413.18 |
| 26 | 8/3/2010 | 2007 Ferrari F430FB | $170,174.07 |
| 27 | 8/10/2010 | 2009 Freightliner | $118,771.00 |
| 28 | 8/10/2010 | 2010 Maserati Quattroporte | $139,228.70 |
| 29 | 8/11/2010 | 2003 Beall 2 Axle Semi Tank Trailer | $32,555.00 |
| 30 | 8/17/2010 | 2003 and 2004 Beall semi tank | $62,000.00 |

---

[6] Counts 1 through 8 of the superseding indictment charged Hailey with wire fraud based on eight of the transfers to Hailey's accounts, on April 12, 2010, May 28, 2010, July 1, 2010, August 27, 2010, September 10, 2010, October 7, 2010, December 6, 2010, and December 21, 2010. ECF No. 109 at 1-2. Those transactions totaled $2,981,984.00.

4

| | | trailers | |
|---|---|---|---|
| 31 | 9/6/2010 | 2007 Lincoln Navigator | $40,960.08 |
| 32 | 9/7/2010 | 2010 Freightliner | $190,228.00 |
| 33 | 10/9/2010 | 2011 Nissan Armada | $52,429.02 |
| 34 | 11/3/2010 | 2007 Ferrari 612 Scag F1 | $186,438.25 |
| 35 | 11/15/2010 | 2010 Bentley CGTS and 2010 Bentley CGT | $377,210.38 |
| 36 | 3/1/2010 | 3.75 ct white gold diamond ring | $20,000.00 |
| 37 | 8/25/2010 | Diamond bracelet / white gold | $12,050.00 |
| 38 | 12/10/2010 | Diamond hoop earring, white gold w/ diamonds | $10,900.00 |
| 39 | 12/10/2010 | Diamond tennis necklace w/ 23.94 ct in diamonds | $26,000.00 |
| 40 | 7/31/2010 | Diamond bracelet w/ 25.90 ct. in diamonds | $13,000.00 |

*Id.* at 2-6.

Deputy United States Marshal Rick Henry, who did not testify at trial, has declared that he investigated Hailey's fraud, and discovered that 119 other items had been "purchased with funds from or traceable to one or more of the 13 bank accounts at M&T Bank [associated with Hailey]" ("the indirect assets"). ECF No. 106-1 ¶¶2-3. The indirect assets are listed in Schedule A attached to the Order accompanying this Memorandum Opinion, in paragraphs 38 through 156.[7] ECF No. 111-1. Hailey's counsel states that he has confirmed that "approximately 20%" of those assets were "purchased on or after October 1, 2009, the time at which the evidence arguably showed that the first

---

[7] Items 45 through 57 of the indirect assets are the funds remaining in the 13 M&T Bank accounts. *Compare* ECF No. 111-1 ¶¶45-57 (listing 13 M&T Bank account numbers) *with* ECF No. 116-1 at 102 (listing Hailey's 13 M&T Bank accounts, with same account numbers).

allegedly illegal funds were received." ECF No. 112 at 2. He has been unable to determine the purchase dates or source of funds for the remaining 80 per cent of the indirect assets. Id.

After judgment was entered against Hailey, the government sought a preliminary forfeiture order requiring forfeiture in the form of a money judgment, and forfeiture of the assets that were the subject of the money laundering convictions, plus the indirect assets; a writ of entry; and assurance that the real property Hailey owns, at 10801 Catron Road, Perry Hall, MD, is protected by hazard insurance. ECF Nos. 106, 114. Hailey opposed entry of the preliminary forfeiture order. ECF No. 112.

II. Analysis

Under Fed. R. Crim. P. 32.2(b)(1)(A), "[a]s soon as practical after a verdict . . . of guilty, . . . the court must determine what property is subject to forfeiture under the applicable statute." The Court must decide whether the government has established the requisite nexus between any specific property sought and the offense; if the government seeks a money judgment, the Court determines how much money to order the defendant to pay. Id. The Court may consider evidence in the record and any additional relevant, reliable evidence or information provided by the parties. Id. 32.2(b)(1)(B).

Under 18 U.S.C. § 981(a)(1)(C), all proceeds traceable to mail and wire fraud are subject to forfeiture. Under 18 U.S.C. § 982(a)(1) a defendant convicted of money laundering must "forfeit to the United States any property, real or personal, involved in [the money laundering] offense, or any property traceable to such property." The government must show, by a preponderance of the evidence, that the funds or property are traceable to the wire fraud or were involved in the money laundering offense. *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011).

The government must trace the funds to the criminal course of conduct, but it need not trace them to a particular illegal act, to satisfy its burden.[8] The Court may consider the timing of the defendants' acquisition of the property relative to his commission of the offense, his lack of other legitimate sources of income, and any steps taken to conceal his connection to the asset.[9]

A.   Money Judgment

At trial, the government established, beyond a reasonable doubt, that Hailey obtained $2,981,984.00 through the wire fraud

---

[8] *United States v. Adams*, No. 08-0033, 2009 WL 1766794, *3 (citing *United States v. Parcels of Land*, 903 F.2d 36, 42 (1st Cir. 1990)).

[9] *Adams*, 2009 WL 1766794, *3 (citing *United States v. Alaniz*, 148 F.3d 929, 934 (8th Cir. 1998)).

scheme (counts 1 through 8). ECF No. 109. The record shows by a preponderance of the evidence that the fraud scheme involved $9,128,375.11.[10] Hailey will be ordered to forfeit $9,128,375.11 in the form of a personal money judgment.[11]

B. Specific Property

To satisfy the money judgment the government also seeks an order of forfeiture of: (1) the property in counts 9 through 40; and (2) the indirect assets.[12] ECF No. 106; ECF No. 106-3 ¶10. The jury's verdict shows that the assets listed in counts 9 through 40 were part of the money laundering scheme. ECF No. 109. Those assets are subject to forfeiture.

The government has shown, by a preponderance of the evidence, that the indirect assets in paragraphs 45 through 57 on Schedule A were part of the money laundering scheme. Assets 45 through 57 are the funds seized from Hailey's 13 M&T Bank

---

[10] See ECF No. 116-1 at 4 (Gov't's Ex. 172); Id. at 3 (Gov't's Ex. 171); cf. Adams, 2009 WL 1766794, *3.

[11] Hailey objects to the entry of a forfeiture order because he contends that the forfeited property should be used to satisfy restitution. ECF No. 112. "Because forfeiture and restitution serve different goals, a defendant generally has no right or entitlement to use forfeited funds to satisfy an additional restitution obligation." United States v. O'Conner, 321 F. Supp. 2d 722, 729 (E.D. Va. 2004); see also United States v. Pescatore, 637 F.3d 128, 137 (2d Cir. 2011).

[12] The government will be ordered to return to Hailey any assets seized which exceed the amount of the money judgment.

accounts.[13]  The funds remaining in the 13 accounts were unspent proceeds of the RIN sales, or funds commingled with those proceeds.  Legitimate funds that have been commingled with tainted funds are involved in money laundering.[14]

The government has not shown, by a preponderance of the evidence, that the remaining indirect assets (items 38 through 44 and 58 through 156) were involved in the money laundering scheme or are traceable to the fraud.  Deputy Henry's declaration, which was not evaluated by the jury, does not establish this.  Hailey's counsel has indicated that he has not been able to confirm that the indirect assets were purchased after the scheme began, or to trace the expenditures.  ECF No. 112 at 2.  The government has not provided evidence of the connection of many of the items to the bank accounts, the timing of the purchases, or even the value of some items.

---

[13] *Compare* ECF No. 111-1 ¶¶45-57 (listing 13 M&T Bank account numbers) *with* ECF No. 116-1 at 102 (listing Hailey's 13 M&T Bank accounts, with same account numbers).

[14] *United States v. McGauley*, 279 F.3d 62, 76-77 (1st Cir. 2002) ("[T]he commingling of tainted funds (mail fraud proceeds) with legitimate funds is enough to expose the legitimate funds to forfeiture, if the commingling was done for the purpose of concealing the nature or source of the tainted funds."); *United States v. Baker*, 227 F.3d 955, 970 n.4 (7th Cir. 2000) ("[E]ven legitimate funds that are commingled with illegitimate funds can be forfeited if the legitimate funds were somehow involved in the offense, such as by helping to conceal the illegal funds."); *United States v. Tencer*, 107 F.3d 1120, 1135 (5th Cir. 1997) (same).

C. Substitute Assets

The government contends that if the indirect assets are not subject to forfeiture under §§ 981 or 982, the Court should order them forfeited as substitute assets. ECF No. 116 at 3. To order the forfeiture of substitute assets, the Court must

> find that "as a result of any act or omission of the defendant," the forfeitable property "(A) cannot be located upon the exercise of due diligence; (B) has been transferred to . . . a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty."

*United States v. Alamoudi*, 452 F.3d 310, 315-16 (4th Cir. 2006) (*quoting* 18 U.S.C. § 853(p)).[15]

Detective Aiosa's testimony established by a preponderance of the evidence that the vast majority of the proceeds of the RIN sales have been transferred to third parties. *Compare* ECF No. 116-1 at 3 (Gov't's Ex. 171, showing the $9,128,375 in RIN proceeds were deposited into the ***9901 account and moved among Hailey's 13 accounts, with minimal deposits from other sources) *with* Gov't's Ex. 177 at 1 (showing that $9,537,770.80 was disbursed to third parties from Hailey's 13 accounts). The government is entitled to forfeiture of the remaining indirect assets as substitute assets.

---

[15] Though it discusses forfeiture of the proceeds of illegal drug activity, 21 U.S.C. § 853 applies to all criminal forfeiture proceedings. 28 U.S.C. § 2461(c).

D.   Writ of Entry and Proof of Insurance

Pursuant to 21 U.S.C. § 853(e) and (g), the government's motion for a writ of entry will be granted to enable it to protect the United States's interest in the property which is the subject of the preliminary forfeiture order.

Pursuant to the Court's pre-trial order, ECF No. 33, Hailey will be ordered to provide proof that the Catron Road property, which is subject to the forfeiture order, remains protected by hazard insurance.

III. Conclusion

For the reasons stated above, the government's motions for a preliminary forfeiture order and writ of entry will be granted as modified.

_8/22/12_  
Date

_/s/ William D. Quarles_  
William D. Quarles, Jr.  
United States District Judge