```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF MARYLAND
      - - - - - - - - - - - - - - - -
 3    UNITED STATES OF AMERICA,          :
                                         :
 4                                       :
                         Plaintiff,      :     CASE NO.:
 5                vs.                     :     WDQ-11-0540
                                         :
 6    RODNEY HAILEY,                     :
                                         :
 7                                       :
                         Defendant.      :
 8    - - - - - - - - - - - - - - - -

 9                                  Baltimore, Maryland

10                              Monday, October 1, 2012

11    Deposition of:

12                  TRACEY HAILEY,

13    called for oral examination by counsel for

14    Plaintiff, pursuant to notice, at the Law Offices

15    of U.S. Department of Justice United States

16    Attorney's Office, 36 South Charles Street,

17    Baltimore, Maryland, before Sylvia L. Jacobs,

18    Court Reporter, of Art Miller & Associates, a

19    Notary Public in and for the State of Maryland,

20    beginning at 1:59 p.m., when were present on

21    behalf of the respective parties:

22

23

24

25
```

```
 1    On behalf of Plaintiff:
 2              STEFAN D. CASSELLA, ESQUIRE
 3              EVAN SHEA, ESQUIRE
 4              U.S. Department of Justice
 5              36 South Charles Street
 6              Baltimore, Maryland  21201
 7              (410) 209-4986
 8
 9    On behalf of U.S. Department of Justice United
10      States Marshals Service:
11              RICK HENRY, ESQUIRE
12              MICHAEL AIOSA, ESQUIRE
13              101 W. Lombard Street
14              Suite 6115
15              Baltimore, Maryland  21201
16              (410) 209-4947
17
18
19
20
21
22
23
24
25
```

```
 1    APPEARANCES:   (Continued)

 2              On behalf of the Defendant:

 3              JOSEPH L. EVANS, ESQUIRE

 4              DOUGLAS R. MILLER, ESQUIRE

 5              Office of the Federal Public Defender

 6              District of Maryland

 7              100 South Charles Street

 8              Tower II, 9th Floor

 9              Baltimore, Maryland  21201

10              (410) 962-3962

11

12    On behalf of Tracey Hailey:

13              M. SCOTLAND MORRIS, ESQUIRE

14              Simms Showers, LLP

15              20 South Charles Street

16              Suite 702

17              Baltimore, Maryland  21201

18              (410) 783-5795

19

20

21

22                   *   *   *   *   *

23

24

25
```

1                     C O N T E N T S

2

3     EXAMINATION BY:                                        PAGE

4         Counsel for Plaintiff                                  5

5

6

7

8

9     HAILEY DEPOSITION EXHIBITS: *                          PAGE

10

11

12

13

14

15

16

17

18

19

20

21                     (* No exhibits marked.)

22

23

24

25

```
 1              P R O C E E D I N G S
 2    WHEREUPON,
 3                    TRACEY HAILEY,
 4    called as a witness, and having been first duly
 5    sworn, was examined and testified as follows:
 6              EXAMINATION BY COUNSEL FOR PLAINTIFF
 7    BY MR. CASSELLA:
 8         Q    Ms. Hailey, I'm Stef Cassella.  I don't
 9    think we've ever met before, but thank you very
10    much for coming in today.  I understand you're
11    here in response to the deposition subpoena that
12    we served on you; is that right?
13         A    That is correct.
14         Q    Okay.  Before we get started, I'll put
15    on the record why we're here and why we're not
16    here.  We're here with respect to the issues set
17    forth in the deposition subpoena.  That is, we're
18    here only to ask questions regarding the
19    whereabouts of the money that has been ordered
20    forfeited by the court.
21              The court ordered the forfeiture of
22    some $9 million.  Some of that money has been
23    recovered, some has not.  Our purpose is only to
24    ask questions regarding the whereabouts of the
25    missing money, if it still exists, if it doesn't
```

1   exist and if it does exist who has it and where it

2   might be.   And so we have a series of questions to

3   ask you regarding the disposition of the money.

4             We're not here to talk about any claim

5   that you might have to the property that has been

6   forfeited.   You probably have been served already

7   with a notice of your right to make a claim to

8   property.   That's a requirement -- it's a pro

9   forma requirement that we're required to make.

10  We're required to send out a notice of that.   I'm

11  not aware of any possible legal or factual issue

12  that you could raise in objection to the

13  forfeiture.   That's up to you and your attorney to

14  talk about, but that's not why we're here today.

15  We're here only to focus on the issues regarding

16  the disposition of the property.

17            If it turns out that later you made a

18  claim to the property that has already been

19  forfeited and there was some conceivable argument

20  that I can't possibly think of why we have to have

21  another deposition, we might have a deposition on

22  that question on that day.   That's not what we're

23  here to talk about today.

24            MR. CASSELLA:   Is everybody clear on

25  that so we're good?   Okay.

```
 1              Scott, you sent me a note indicating
 2    that Ms. Hailey intended to invoke the two
 3    privileges, one regarding the Fifth Amendment, I
 4    assume as to herself, and the other the spousal
 5    privilege with respect to any compulsion to
 6    provide information that would be used against her
 7    husband.  Is it still her intention to invoke the
 8    privileges?
 9              MR. MORRIS:  Yes, it is.  And the
10    primary privilege she is going to be invoking
11    today is the marital privilege --
12              MR. CASSELLA:  Okay.
13              MR. MORRIS:  -- against adverse
14    testimony.
15              MR. CASSELLA:  Okay.  Is it her intent
16    to invoke the privilege as to every question or
17    shall we go question by question or what's --
18              MR. MORRIS:  Every question.
19              MR. CASSELLA:  Okay.  My intent then --
20    I've got a list of questions.  I'll go ahead and
21    ask the questions.  Ms. Hailey can consult with
22    you and decide whether or not to invoke the
23    privilege if she wants to with respect to some
24    questions or whether it's not appropriate to
25    invoke it, but I'll ask the questions in any
```

1   event.

2           Once we get started, rather than making

3   her repeat the entire recitation of what her

4   assertion of the privilege is if she just wants to

5   say, "I invoke the two privileges" that's fine.

6   We'll make a record.  My intent is to make a

7   record of the questions that we intend to ask and

8   of her invocation of the privilege, and then we

9   can decide at that point what to do next, whether

10  it is to take the issue to the court with a motion

11  to compel, whether it's to take the issue to the

12  court with a grant of immunity that moots the

13  question.  We can decide all that another day, but

14  I just want to make a record today as to what the

15  questions are and what she's invoking.

16          MR. MORRIS:  I don't think we need to

17  go through that because, as I said, she is going

18  to be blanketly asserting the marital privilege --

19          MR. CASSELLA:  Uh-huh.

20          MR. MORRIS:  -- not to have to testify

21  --

22          MR. CASSELLA:  Right.

23          MR. MORRIS:  -- in a way that would be

24  adverse to her husband.

25          MR. CASSELLA:  Right.

1          MR. MORRIS:  I think that's probably a

2    clear enough issue.  If you believe that there's

3    some issue why she can't assert that privilege, I

4    think we can take that to the judge as it is.  I

5    don't think we're going to need to go question by

6    question through, you know, whether she can refuse

7    to testify based on that privilege.

8          MR. CASSELLA:  I think there's some

9    questions that I'm going to ask to which that

10   assertion would not be proper in any circumstance

11   such as what is your name --

12         MR. MORRIS:  Okay.

13         MR. CASSELLA:  -- and, you know, other

14   things of that biographical nature.  I think that

15   there are some other questions where she might

16   have a valid assertion of the spousal privilege

17   depending upon whether or not the purpose of the

18   question or the focus of the question is on the

19   disposition of the assets as opposed to whether

20   it's evidence that could be used to prosecute her

21   husband in a future criminal prosecution.  So to

22   help us decide what the scope is of any immunity

23   we have to grant it helps to know exactly what

24   questions it is that she's objecting to answer.

25         MR. MORRIS:  I think that the purpose

```
 1  of the marital privilege is really not to protect

 2  someone from testimony that is to protect the

 3  spouse that has been accused --

 4              MR. CASSELLA:  Uh-huh.

 5              MR. MORRIS:  -- or in this case has

 6  been convicted but it's to prevent the spouse who

 7  has not been accused of anything of having to go

 8  through the process of being compelled to testify

 9  against her husband.

10              MR. CASSELLA:  I think that the scope

11  of the privilege is Ms. Hailey's to invoke and not

12  her husband's to invoke.  I think we agree on

13  that.  I think that she can invoke the privilege

14  with respect to a question that would lead to a

15  future prosecution of her husband, but she cannot

16  invoke the privilege with respect to a question

17  that leads only to the discovery of the location

18  of assets.

19              MR. MORRIS:  I would respectfully

20  disagree with you on that.

21              MR. CASSELLA:  Okay.  You have myself

22  and one appellate court on one side of the

23  question and you on the other side.  We'll see how

24  that turns out.

25              MR. MORRIS:  Yes.
```

1          MR. CASSELLA:  That's why I wanted to

2    go through this, and then we can present the issue

3    to the court and see.

4          MR. MORRIS:  I also -- I guess I should

5    raise that it's my understanding that Department

6    of Justice policy is that although there's no --

7    there's nothing that says you can't try to compel

8    close family members from testifying.  When you're

9    talking about the current spouse of a defendant, a

10   putative defendant, then it is completely up to

11   the spouse as to whether they want to testify or

12   not, and so I believe that it would be in

13   contravention of Department of Justice policy to

14   require her to testify when she has said she's not

15   going to testify against her husband --

16          MR. CASSELLA:  Well --

17          MR. MORRIS:  -- in a way that would be

18   adverse to his interests.

19          MR. CASSELLA:  Since I don't think that

20   she has a spousal privilege with respect to

21   questions directed toward the location of assets,

22   the department -- if there is such a department

23   policy -- I'll take your word for it -- I don't

24   think it would apply.

25          MR. MORRIS:  Okay.

1          MR. CASSELLA:  Okay.

2          MR. MORRIS:  I'll have to respectfully

3    disagree with you.

4          MR. CASSELLA:  I'm sure.

5          Joe?

6          MR. EVANS:  Just for the record, two

7    things.  First, when you were talking about

8    information that would be used against her

9    husband, as far as Mr. Hailey is concerned that

10   would cover information that would be used against

11   him at sentencing not simply in the event of a new

12   prosecution.  I just want to put that on the

13   record.

14         MR. CASSELLA:  I understand.  That's an

15   interesting point, but it's probably not one we

16   have to resolve because from what I understand

17   she's not going to say anything that we could use

18   before the sentencing that occurs on October 11th,

19   and we're not going to get this issue resolved

20   before October 11th any way.

21         MR. EVANS:  I understand the

22   practicality of it.  I simply wanted -- in the

23   event there was an expedited resolution I wanted

24   at least our position to be on the record.

25         MR. CASSELLA:  Okay.  All right.

```
 1    BY MR. CASSELLA:
 2          Q    Ms. Hailey, what's your full name?
 3          A    Tracey Oliver Hailey.
 4          Q    And what's your date of birth?
 5          A    12/2/71.
 6          Q    And have you ever been known by any
 7    other name?
 8          A    Not other than Tracey Oliver.
 9          Q    How long have you been married to Mr.
10    Hailey?
11          A    Thirteen years.
12          Q    And did you take his name, Hailey when
13    you become married?
14          A    I did.
15          Q    Do you sometimes still use your maiden
16    name?
17          A    I do.
18          Q    Do you have any siblings?
19          A    I do.
20          Q    And what are their names, please?
21               MR. MORRIS:   I'm going to object on the
22    basis of relevance.
23               MR. CASSELLA:   Objection noted.
24          Q    What are their names, please?
25          A    Connie, Felicia and Gloria.
```

1        Q    And their last names?

2             MR. MORRIS:  Excuse me.

3             MR. CASSELLA:  Uh-huh.

4             (Brief pause in the proceedings.)

5             MR. MORRIS:  I'm going to object again

6    on the basis of relevance.  Can you give us an

7    idea of why that would be relevant?

8             MR. CASSELLA:  Sometimes criminal

9    defendants put assets in the names of family

10   members.

11   BY MR. CASSELLA:

12       Q    Their last names, please.

13       A    Okay.  Connie Oliver, Felicia Jackson

14   and Gloria Jackson.

15       Q    Okay.  And where do each of them live,

16   please?

17       A    I'm not sure where one lives, but I

18   know two of them live in Virginia.

19       Q    The towns?

20       A    Chase City.  Richmond.

21       Q    What sisters live in which towns,

22   please?

23       A    Connie is Chase City.  Felicia is

24   Richmond.

25       Q    And the other sister you do not know

```
 1    her whereabouts?

 2           A     I do not know her whereabouts.

 3           Q     Okay.  And what are your parent's name?

 4           A     You're familiar with one.  Harold

 5    Oliver and Mary Oliver.

 6           Q     And do they live together?

 7           A     They do.

 8           Q     Is that the address in Virginia where

 9    we previously found Mr. Harold Oliver?

10           A     That is correct.

11           Q     Okay.  Does Rodney Hailey have any

12    siblings?

13           A     He does.

14           Q     And what are their names, please?

15           A     Let me see.  Wesley, Charles and

16    Darren.

17           Q     And do they all have the last name of

18    Hailey?

19           A     They do.

20           Q     And do you know where they live?

21           A     As far as I know, they live in Jersey.

22    Jersey City.

23           Q     They all live in Jersey City --

24           A     As --

25           Q     -- as far as you know?
```

1          A     As far as I know.

2          Q     I understand.  You're just telling you

3     me what you know.

4          A     Uh-huh.

5          Q     Does Mr. Hailey have any sisters?  You

6     named three brothers.

7          A     No, he does not.

8          Q     The three brothers, as far as you know,

9     live in Jersey City, New Jersey?

10         A     That is correct.

11         Q     Does Mr. Hailey have any other family

12    members?  For example, does he have any children

13    by a prior marriage?

14         A     No, he doesn't.  I'm sorry.  His

15    brother Wesley actually lives in Carteret.

16         Q     Carteret, New Jersey?

17         A     Yes.

18         Q     Okay.

19               Does Mr. Hailey -- does Mr. Rodney

20    Hailey have any other close family members such as

21    children by a prior marriage?

22         A     No, he does not.

23         Q     Okay.  What are your children's name?

24               MR. MORRIS:  I'm going to object to

25    that.

```
 1                    MR. CASSELLA:  I understand.

 2        Q    What are your children's names?

 3        A    I don't want to answer that.

 4        Q    You have to.  I'm sorry.

 5        A    Felicia -- goodness.  Daya and Neela.

 6        Q    How do you spell those, please?

 7        A    Daya, D-a-y-a, and Neela, N-e-e-l-a.

 8        Q    Okay.  And what are their dates of

 9   birth?

10        A    Daya is March 5, 2002 and Neela is

11   April 14, 2006.

12        Q    Okay.  And do they live with you?

13        A    They do.

14        Q    Do you have any bank accounts

15   presently?  I'm not talking about closed bank

16   accounts you may have had in the past.  Do you

17   presently have any bank accounts?

18                    MR. MORRIS:  I'm going to object on the

19   basis of the marital privilege.

20                    MR. CASSELLA:  Okay.

21        Q    That means you don't have to answer it

22   right now.  We'll come back to it.

23                    Do you have any bank accounts in your

24   children's names?

25                    MR. MORRIS:  Same objection.
```

Deposition of TRACEY HAILEY                                    U.S. V HAILEY

```
 1        Q    Do you have any safe deposit boxes?
 2             MR. MORRIS:  Same objection.
 3        Q    Do you have a safe in your house?
 4             MR. MORRIS:  Same objection.
 5        Q    Do you have any store of cash in your
 6   house or any other location?
 7             MR. MORRIS:  Same objection.
 8        Q    Do you have any storage locations where
 9   you've stored either cash, furniture, clothing or
10   any other personal items?
11             MR. MORRIS:  Same objection.
12        Q    Do you have any -- have you ever rented
13   any vehicles to move any assets to or from the
14   State of Maryland?
15             MR. MORRIS:  Same objection.
16        Q    Do you have any assets of any kind in
17   your children's name?
18             MR. MORRIS:  Same objection.
19        Q    Do you have any assets of any kind in
20   any other family member's name?
21             MR. MORRIS:  Same objection.
22        Q    Do you have -- have you ever
23   transferred any assets to any family members?
24             MR. MORRIS:  Same objection.
25        Q    Have you ever transferred or has Rodney
```

 1 | Hailey ever transferred any assets to any

 2 | third-party as an investment?

 3 |          MR. MORRIS:  Same objection.

 4 |     Q    Has any member of your family ever

 5 | introduced you to someone who would hold assets

 6 | for you?

 7 |          MR. MORRIS:  Same objection.

 8 |     Q    Has any member of Rodney Hailey's

 9 | family ever introduced you to someone who would

10 | hold assets for you?

11 |          MR. MORRIS:  Same objection.

12 |     Q    Do you recall a time when you or

13 | Mr. Hailey gave any money to someone to buy a car,

14 | for example?

15 |          MR. MORRIS:  Same objection.

16 |     Q    During the time Mr. Hailey was

17 | operating Clean Green Fuel he cashed $500,000

18 | worth of checks at M&T bank converting them to

19 | cash.  What happened to that cash?

20 |          MR. MORRIS:  Same objection.

21 |     Q    Do you have still have any of that

22 | cash?

23 |          MR. MORRIS:  Same objection.

24 |     Q    Did he give any of it to you?

25 |          MR. MORRIS:  Same objection.

1      Q     What's your current source of income?

2            MR. MORRIS:  Same objection.

3            MR. CASSELLA:  How is that likely to

4     result --

5            MR. MORRIS:  It relates to assets.

6            MR. CASSELLA:  Anything relating to any

7     assets.  All right.  We'll go ahead and ask them

8     any way.

9     BY MR. CASSELLA:

10     Q     What's your current source of income?

11           MR. CASSELLA:  You can make the

12     objection.

13           MR. MORRIS:  Yes.

14     Q     Do you have any debit cards that you're

15     using?

16           MR. MORRIS:  Same objection.

17     Q     From what banks do you have those debit

18     cards?

19           MR. MORRIS:  Same objection.

20     Q     How are those debit cards funded?

21           MR. MORRIS:  Same objection.

22     Q     Are you using any credit cards?

23           MR. MORRIS:  Same objection.

24     Q     In whose names are any credit cards

25     that you have?

```
 1                MR. MORRIS:  Same objection.

 2        Q    How are you paying your credit card

 3   bills?

 4                MR. MORRIS:  Same objection.

 5        Q    Have you taken out any loans?

 6                MR. MORRIS:  Same objection.

 7        Q    Do you have any store value cards?

 8                MR. MORRIS:  Same objection.

 9        Q    How are you paying your living

10   expenses?

11                MR. MORRIS:  Same objection.

12        Q    How are you paying your utility bills?

13                MR. MORRIS:  Same objection.

14        Q    What became of the money you received

15   from Nordstrom when you turned in the assets that

16   we released from the forfeiture?

17                MR. MORRIS:  Same objection.

18        Q    Why was the account that you opened at

19   SunTrust opened in your maiden name using your

20   father's address?

21                MR. MORRIS:  Same objection.

22        Q    What became of the cash you got from

23   the tax return that you filed?

24                MR. MORRIS:  Same objection.

25        Q    Who was the tax preparer?
```

```
 1              MR. MORRIS:   Same objection.
 2        Q     Have you used any of the money that we
 3   released from the forfeiture for the purpose of
 4   paying the attorney's fees which was the purpose
 5   for which it was released?
 6              MR. MORRIS:   Same objection.
 7        Q     What was the source of the $11,000 in
 8   cash that you used to pay your property tax bill
 9   in Baltimore County?
10              MR. MORRIS:   Same objection.
11        Q     Were you ever an employee of Clean
12   Green Fuel?
13              MR. MORRIS:   Same objection.
14              MR. CASSELLA:   How is that?
15              MR. MORRIS:   Same objection.
16        Q     What were your duties at Clean Green
17   Fuel?
18              MR. MORRIS:   Same objection.
19        Q     How much were you paid?
20              MR. MORRIS:   Same objection.
21        A     What was the manner in which you were
22   paid?
23              MR. MORRIS:   Same objection.
24        Q     Did you receive any other compensation
25   for your work at Clean Green Fuel other than the
```

```
 1    money that you received in the form of checks?
 2               MR. MORRIS:  Same objection.
 3         Q    Do you have any businesses of your own?
 4               MR. MORRIS:  Same objection.
 5         Q    Is Taoh, T-a-o-h, still in business?
 6               MR. MORRIS:  Same objection.
 7         Q    Does it have any assets?
 8               MR. MORRIS:  Same objection.
 9         Q    Is i-Genovations still in business?
10               MR. MORRIS:  Same objection.
11         Q    Does it have any assets?
12               MR. MORRIS:  Same objection.
13         Q    What is the source of any assets that
14    those businesses have?
15               MR. MORRIS:  Same objection.
16         Q    What did you do with the $200,000 that
17    was transferred by Clean Green Fuel to Taoh?
18               MR. MORRIS:  Same objection.
19         Q    Did you ever have signatory authority
20    over any of Mr. Hailey's bank accounts at M&T
21    bank?
22               MR. MORRIS:  Same objection.
23         Q    Did you ever use any such signatory
24    authority?
25               MR. MORRIS:  Same objection.
```

1          Q     Did you ever transfer money to anyone

2     else?

3                MR. MORRIS:  Same objection.

4                MR. CASSELLA:  Any other questions that

5     we want to ask now?  Okay.

6                MR. EVANS:  Can I speak with

7     Mr. Morris?

8                MR. CASSELLA:  Yeah.

9                (Pause in the proceedings.)

10                MR. CASSELLA:  Just to be clear, Scott,

11    every time you said she asserts the privilege,

12    she's asserting the spousal privilege; is that

13    correct?

14                MR. MORRIS:  That's correct.

15                MR. CASSELLA:  Okay.  Anything else?

16                MR. MORRIS:  You had also subpoenaed

17    the documents.

18                MR. CASSELLA:  Right.

19                MR. MORRIS:  As I indicated in our

20    email response, our position is that the

21    production of those documents would also be in

22    violation of the marital privilege or we would

23    assert the marital privilege against the

24    production.

25                MR. CASSELLA:  Okay.  I understand.

```
 1                    MR. EVANS:  Can I ask a question --
 2                    MR. CASSELLA:  Yes.
 3                    MR. EVANS:  -- on Mr. Hailey's behalf?
 4                    MR. CASSELLA:  Sure.  You're asking me
 5    or Mrs. Hailey?
 6                    MR. EVANS:  I'm actually just
 7    clarifying the basis for the objection.
 8                    MR. CASSELLA:  Okay.
 9                    MR. EVANS:  Is it -- there are two
10    marital privileges?
11                    MR. MORRIS:  Against adverse testimony
12    as opposed to marital communications.
13                    MR. EVANS:  Thank you.
14                    MR. CASSELLA:  I don't have anything
15    else.
16                        (Signature having not been waived, the
17                        Deposition of TRACEY HAILEY, was
18                        concluded at 2:18 p.m.)
19                            *   *   *   *   *
20
21
22
23
24
25
```

```
 1        CERTIFICATE OF NOTARY PUBLIC
 2        I, SYLVIA L. JACOBS, the officer before whom
 3   the foregoing deposition was taken, do hereby
 4   certify that the witness whose testimony appears
 5   in the foregoing deposition was duly sworn by me;
 6   that the testimony of said witness was taken by me
 7   in stenotype and thereafter reduced to typewriting
 8   under my direction; that said deposition is a true
 9   record of the testimony given by said witness;
10   that I am neither counsel for, related to, nor
11   employed by any of the parties to the action in
12   which this deposition was taken; and, further,
13   that I am not a relative or employee of any
14   counsel or attorney employed by the parties
15   hereto, nor financially or otherwise interested in
16   the outcome of this action.
17
18                          SYLVIA L. JACOBS
19                          Notary Public in and for
20                          the State of Maryland
21
22
23
24   My commission expires:
25   June 26, 2016
```

· Deposition of TRACEY HAILEY · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · U.S. V HAILEY

## WORD INDEX

**< $ >**
**$11,000**  22:7
**$200,000**  23:16
**$500,000**  19:17
**$9**  5:22

**< 1 >**
**1**  1:10
**1:59**  1:20
**100**  3:7
**101**  2:13
**11th**  12:18, 20
**12**  13:5
**14**  17:11

**< 2 >**
**2**  13:5
**2:18**  25:18
**20**  3:15
**2002**  17:10
**2006**  17:11
**2012**  1:10
**2016**  26:25
**209-4947**  2:16
**209-4986**  2:7
**21201**  2:6, 15  3:9, 17
**26**  26:25

**< 3 >**
**36**  1:16  2:5

**< 4 >**
**410**  2:7, 16  3:10, 18

**< 5 >**
**5**  4:4  17:10

**< 6 >**
**6115**  2:14

**< 7 >**
**702**  3:16
**71**  13:5
**783-5795**  3:18

**< 9 >**

**962-3962**  3:10
**9th**  3:8

**< A >**
**account**  21:18
**accounts**  17:14, 16,
17, 23  23:20
**accused**  10:3, 7
**action**  26:11, 16
**address**  15:8  21:20
**adverse**  7:13  8:24
11:18  25:11
**agree**  10:12
**ahead**  7:20  20:7
**AIOSA**  2:12
**Amendment**  7:3
**AMERICA**  1:3
**answer**  9:24  17:3,
21
**APPEARANCES**  3:1
**appears**  26:4
**appellate**  10:22
**apply**  11:24
**appropriate**  7:24
**April**  17:11
**argument**  6:19
**Art**  1:18
**asking**  25:4
**assert**  9:3  24:23
**asserting**  8:18
24:12
**assertion**  8:4  9:10,
16
**asserts**  24:11
**assets**  9:19  10:18
11:21  14:9  18:13,
16, 19, 23  19:1, 5,
10  20:5, 7  21:15
23:7, 11, 13
**Associates**  1:18
**assume**  7:4
**attorney**  6:13  26:14
**Attorney's**  1:16
22:4
**authority**  23:19, 24
**aware**  6:11

**< B >**
**back**  17:22

**Baltimore**  1:9, 17
2:6, 15  3:9, 17  22:9
**bank**  17:14, 15, 17,
23  19:18  23:20, 21
**banks**  20:17
**based**  9:7
**basis**  13:22  14:6
17:19  25:7
**beginning**  1:20
**behalf**  1:21  2:1, 9
3:2, 12  25:3
**believe**  9:2  11:12
**bill**  22:8
**bills**  21:3, 12
**biographical**  9:14
**birth**  13:4  17:9
**blankety**  8:18
**boxes**  18:1
**Brief**  14:4
**brother**  16:15
**brothers**  16:6, 8
**business**  23:5, 9
**businesses**  23:3, 14
**buy**  19:13

**< C >**
**called**  1:13  5:4
**car**  19:13
**card**  21:2
**cards**  20:14, 18, 20,
22, 24  21:7
**Carteret**  16:15, 16
**CASE**  1:4  10:5
**cash**  18:5, 9  19:19,
19, 22  21:22  22:8
**cashed**  19:17
**CASSELLA**  2:2
5:7, 8  6:24  7:12,
15, 19  8:19, 22, 25
9:8, 13  10:4, 10, 21
11:1, 16, 19  12:1, 4,
14, 25  13:1, 23
14:3, 8, 11  17:1, 20
20:3, 6, 9, 11  22:14
24:4, 8, 10, 15, 18,
25  25:2, 4, 8, 14
**CERTIFICATE**  26:1
**certify**  26:4
**Charles**  1:16  2:5

3:7, 15  15:15
**Chase**  14:20, 23
**checks**  19:18  23:1
**children**  16:12, 21
**children's**  16:23
17:2, 24  18:17
**circumstance**  9:10
**City**  14:20, 23
15:22, 23  16:9
**claim**  6:4, 7, 18
**clarifying**  25:7
**Clean**  19:17  22:11,
16, 25  23:17
**clear**  6:24  9:2
24:10
**close**  11:8  16:20
**closed**  17:15
**clothing**  18:9
**come**  17:22
**coming**  5:10
**commission**  26:24
**communications**
25:12
**compel**  8:11  11:7
**compelled**  10:8
**compensation**
22:24
**completely**  11:10
**compulsion**  7:5
**conceivable**  6:19
**concerned**  12:9
**concluded**  25:18
**Connie**  13:25
14:13, 23
**consult**  7:21
**Continued**  3:1
**contravention**  11:13
**converting**  19:18
**convicted**  10:6
**correct**  5:13  15:10
16:10  24:13, 14
**counsel**  1:13  4:4
5:6  26:10, 14
**County**  22:9
**COURT**  1:1, 18
5:20, 21  8:10, 12
10:22  11:3
**cover**  12:10
**credit**  20:22, 24

Deposition of TRACEY HAILEY                                   U.S. V HAILEY

21:2
**criminal**  9:21  14:8
**current**  11:9  20:1,
10

**< D >**
**Darren**  15:16
**date**  13:4
**dates**  17:8
**day**  6:22  8:13
**Daya**  17:5, 7, 10
**D-a-y-a**  17:7
**debit**  20:14, 17, 20
**decide**  7:22  8:9,
13  9:22
**Defendant**  1:7  3:2
11:9, 10
**defendants**  14:9
**Defender**  3:5
**Department**  1:15
2:4, 9  11:5, 13, 22,
22
**depending**  9:17
**deposit**  18:1
**Deposition**  1:11
4:9  5:11, 17  6:21,
21  25:17  26:3, 5, 8,
12
**directed**  11:21
**direction**  26:8
**disagree**  10:20
12:3
**discovery**  10:17
**disposition**  6:3, 16
9:19
**DISTRICT**  1:1, 2
3:6
**documents**  24:17,
21
**DOUGLAS**  3:4
**duly**  5:4  26:5
**duties**  22:16

**< E >**
**either**  18:9
**email**  24:20
**employed**  26:11, 14
**employee**  22:11
26:13
**entire**  8:3

**ESQUIRE**  2:2, 3, 11,
12  3:3, 4, 13
**EVAN**  2:3
**EVANS**  3:3  12:6,
21  24:6  25:1, 3, 6,
9, 13
**event**  8:1  12:11, 23
**everybody**  6:24
**evidence**  9:20
**exactly**  9:23
**examination**  1:13
4:3  5:6
**examined**  5:5
**example**  16:12
19:14
**Excuse**  14:2
**EXHIBITS**  4:9, 21
**exist**  6:1, 1
**exists**  5:25
**expedited**  12:23
**expenses**  21:10
**expires**  26:24

**< F >**
**factual**  6:11
**familiar**  15:4
**family**  11:8  14:9
16:11, 20  18:20, 23
19:4, 9
**far**  12:9  15:21, 25
16:1, 8
**father's**  21:20
**Federal**  3:5
**fees**  22:4
**Felicia**  13:25  14:13,
23  17:5
**Fifth**  7:3
**filed**  21:23
**financially**  26:15
**fine**  8:5
**first**  5:4  12:7
**Floor**  3:8
**focus**  6:15  9:18
**follows**  5:5
**foregoing**  26:3, 5
**forfeited**  5:20  6:6,
19
**forfeiture**  5:21
6:13  21:16  22:3

**form**  23:1
**forma**  6:9
**forth**  5:17
**found**  15:9
**Fuel**  19:17  22:12,
17, 25  23:17
**full**  13:2
**funded**  20:20
**furniture**  18:9
**further**  26:12
**future**  9:21  10:15

**< G >**
**give**  14:6  19:24
**given**  26:9
**Gloria**  13:25  14:14
**go**  7:17, 20  8:17
9:5  10:7  11:2  20:7
**going**  7:10  8:17
9:5, 9  11:15  12:17,
19  13:21  14:5
16:24  17:18
**good**  6:25
**goodness**  17:5
**grant**  8:12  9:23
**Green**  19:17  22:12,
16, 25  23:17
**guess**  11:4

**< H >**
**HAILEY**  1:6, 12
3:12  4:9  5:3, 8
7:2, 21  12:9  13:2,
3, 10, 12  15:11, 18
16:5, 11, 19, 20
19:1, 13, 16  25:5, 17
**Hailey's**  10:11
19:8  23:20  25:3
**happened**  19:19
**Harold**  15:4, 9
**help**  9:22
**helps**  9:23
**HENRY**  2:11
**hereto**  26:15
**hold**  19:5, 10
**house**  18:3, 6
**husband**  7:7  8:24
9:21  10:9, 15
11:15  12:9

**husband's**  10:12

**< I >**
**idea**  14:7
**i-Genovations**  23:9
**II**  3:8
**immunity**  8:12  9:22
**income**  20:1, 10
**indicated**  24:19
**indicating**  7:1
**information**  7:6
12:8, 10
**intend**  8:7
**intended**  7:2
**intent**  7:15, 19  8:6
**intention**  7:7
**interested**  26:15
**interesting**  12:15
**interests**  11:18
**introduced**  19:5, 9
**investment**  19:2
**invocation**  8:8
**invoke**  7:2, 7, 16,
22, 25  8:5  10:11,
12, 13, 16
**invoking**  7:10  8:15
**issue**  6:11  8:10, 11
9:2, 3  11:2  12:19
**issues**  5:16  6:15
**items**  18:10

**< J >**
**Jackson**  14:13, 14
**Jacobs**  1:17  26:2,
18
**Jersey**  15:21, 22,
23  16:9, 9, 16
**Joe**  12:5
**JOSEPH**  3:3
**judge**  9:4
**June**  26:25
**Justice**  1:15  2:4, 9
11:6, 13

**< K >**
**kind**  18:16, 19
**know**  9:6, 13, 23
14:18, 25  15:2, 20,
21, 25  16:1, 3, 8

**known** 13:*6*

**< L >**
**Law** 1:*14*
**lead** 10:*14*
**leads** 10:*17*
**legal** 6:*11*
**list** 7:*20*
**live** 14:*15, 18, 21*
  15:*6, 20, 21, 23*
  16:*9* 17:*12*
**lives** 14:*17* 16:*15*
**living** 21:*9*
**LLP** 3:*14*
**loans** 21:*5*
**location** 10:*17*
  11:*21* 18:*6*
**locations** 18:*8*
**Lombard** 2:*13*
**long** 13:*9*

**< M >**
**maiden** 13:*15*
  21:*19*
**making** 8:*2*
**manner** 22:*21*
**March** 17:*10*
**marital** 7:*11* 8:*18*
  10:*1* 17:*19* 24:*22,*
  *23* 25:*10, 12*
**marked.** 4:*21*
**marriage** 16:*13, 21*
**married** 13:*9, 13*
**Marshals** 2:*10*
**Mary** 15:*5*
**MARYLAND** 1:*2, 9,*
  *17, 19* 2:*6, 15* 3:*6,*
  *9, 17* 18:*14* 26:*20*
**means** 17:*21*
**member** 19:*4, 8*
**members** 11:*8*
  14:*10* 16:*12, 20*
  18:*23*
**member's** 18:*20*
**met** 5:*9*
**MICHAEL** 2:*12*
**Miller** 1:*18* 3:*4*
**million** 5:*22*
**missing** 5:*25*
**Monday** 1:*10*

**money** 5:*19, 22, 25*
  6:*3* 19:*13* 21:*14*
  22:*2* 23:*1* 24:*1*
**moots** 8:*12*
**MORRIS** 3:*13* 7:*9,*
  *13, 18* 8:*16, 20, 23*
  9:*1, 12, 25* 10:*5, 19,*
  *25* 11:*4, 17, 25*
  12:*2* 13:*21* 14:*2, 5*
  16:*24* 17:*18, 25*
  18:*2, 4, 7, 11, 15, 18,*
  *21, 24* 19:*3, 7, 11,*
  *15, 20, 23, 25* 20:*2,*
  *5, 13, 16, 19, 21, 23*
  21:*1, 4, 6, 8, 11, 13,*
  *17, 21, 24* 22:*1, 6,*
  *10, 13, 15, 18, 20, 23*
  23:*2, 4, 6, 8, 10, 12,*
  *15, 18, 22, 25* 24:*3,*
  *7, 14, 16, 19* 25:*11*
**motion** 8:*10*
**move** 18:*13*

**< N >**
**name** 9:*11* 13:*2, 7,*
  *12, 16* 15:*3, 17*
  16:*23* 18:*17, 20*
  21:*19*
**named** 16:*6*
**names** 13:*20, 24*
  14:*1, 9, 12* 15:*14*
  17:*2, 24* 20:*24*
**nature** 9:*14*
**need** 8:*16* 9:*5*
**Neela** 17:*5, 7, 10*
**N-e-e-l-a** 17:*7*
**neither** 26:*10*
**new** 12:*11* 16:*9, 16*
**Nordstrom** 21:*15*
**Notary** 1:*19* 26:*1,*
  *19*
**note** 7:*1*
**noted** 13:*23*
**notice** 1:*14* 6:*7, 10*

**< O >**
**object** 13:*21* 14:*5*
  16:*24* 17:*18*
**objecting** 9:*24*

**objection** 6:*12*
  13:*23* 17:*25* 18:*2,*
  *4, 7, 11, 15, 18, 21,*
  *24* 19:*3, 7, 11, 15,*
  *20, 23, 25* 20:*2, 12,*
  *16, 19, 21, 23* 21:*1,*
  *4, 6, 8, 11, 13, 17, 21,*
  *24* 22:*1, 6, 10, 13,*
  *15, 18, 20, 23* 23:*2,*
  *4, 6, 8, 10, 12, 15, 18,*
  *22, 25* 24:*3* 25:*7*
**occurs** 12:*18*
**October** 1:*10*
  12:*18, 20*
**Office** 1:*16* 3:*5*
**officer** 26:*2*
**Offices** 1:*14*
**Okay** 5:*14* 6:*25*
  7:*12, 15, 19* 9:*12*
  10:*21* 11:*25* 12:*1,*
  *25* 14:*13, 15* 15:*3,*
  *11* 16:*18, 23* 17:*8,*
  *12, 20* 24:*5, 15, 25*
  *25:8*
**Oliver** 13:*3, 8*
  14:*13* 15:*5, 5, 9*
**Once** 8:*2*
**opened** 21:*18, 19*
**operating** 19:*17*
**opposed** 9:*19*
  25:*12*
**oral** 1:*13*
**ordered** 5:*19, 21*
**outcome** 26:*16*

**< P >**
**p.m** 1:*20*
**p.m.** 25:*18*
**PAGE** 4:*3, 9*
**paid** 22:*19, 22*
**parent's** 15:*3*
**parties** 1:*21* 26:*11,*
  *14*
**pause** 14:*4* 24:*9*
**pay** 22:*8*
**paying** 21:*2, 9, 12*
  22:*4*
**personal** 18:*10*
**Plaintiff** 1:*4, 14* 2:*1*
  4:*4* 5:*6*

**please** 13:*20, 24*
  14:*12, 16, 22* 15:*14*
  17:*6*
**point** 8:*9* 12:*15*
**policy** 11:*6, 13, 23*
**position** 12:*24*
  24:*20*
**possible** 6:*11*
**possibly** 6:*20*
**practicality** 12:*22*
**preparer** 21:*25*
**present** 1:*20* 11:*2*
**presently** 17:*15, 17*
**prevent** 10:*6*
**previously** 15:*9*
**primary** 7:*10*
**prior** 16:*13, 21*
**privilege** 7:*5, 10, 11,*
  *16, 23* 8:*4, 8, 18*
  9:*3, 7, 16* 10:*1, 11,*
  *13, 16* 11:*20* 17:*19*
  24:*11, 12, 22, 23*
**privileges** 7:*3, 8*
  8:*5* 25:*10*
**pro** 6:*8*
**probably** 6:*6* 9:*1*
  12:*15*
**proceedings.** 14:*4*
  24:*9*
**process** 10:*8*
**production** 24:*21,*
  *24*
**proper** 9:*10*
**property** 6:*5, 8, 16,*
  *18* 22:*8*
**prosecute** 9:*20*
**prosecution** 9:*21*
  10:*15* 12:*12*
**protect** 10:*1, 2*
**provide** 7:*6*
**Public** 1:*19* 3:*5*
  26:*1, 19*
**purpose** 5:*23* 9:*17,*
  *25* 22:*3, 4*
**pursuant** 1:*14*
**put** 5:*14* 12:*12*
  14:*9*
**putative** 11:*10*

**< Q >**

Deposition of TRACEY HAILEY

U.S. V HAILEY

question  6:22  7:16,
17, 17, 18  8:13  9:5,
6, 18, 18  10:14, 16,
23  25:1
questions  5:18, 24
6:2  7:20, 21, 24, 25
8:7, 15  9:9, 15, 24
11:21  24:4

< R >
raise  6:12  11:5
really  10:1
recall  19:12
receive  22:24
received  21:14
23:1
recitation  8:3
record  5:15  8:6, 7,
14  12:6, 13, 24  26:9
recovered  5:23
reduced  26:7
refuse  9:6
regarding  5:18, 24
6:3, 15  7:3
related  26:10
relates  20:5
relating  20:6
relative  26:13
released  21:16
22:3, 5
relevance  13:22
14:6
relevant  14:7
rented  18:12
repeat  8:3
Reporter  1:18
require  11:14
required  6:9, 10
requirement  6:8, 9
resolution  12:23
resolve  12:16
resolved  12:19
respect  5:16  7:5,
23  10:14, 16  11:20
respectfully  10:19
12:2
respective  1:21
response  5:11
24:20

result  20:4
return  21:23
Richmond  14:20, 24
RICK  2:11
right  5:12  6:7
8:22, 25  12:25
17:22  20:7  24:18
RODNEY  1:6
15:11  16:19  18:25
19:8

< S >
safe  18:1, 3
says  11:7
scope  9:22  10:10
SCOTLAND  3:13
Scott  7:1  24:10
see  10:23  11:3
15:15
send  6:10
sent  7:1
sentencing  12:11,
18
series  6:2
served  5:12  6:6
Service  2:10
set  5:16
SHEA  2:3
Showers  3:14
siblings  13:18
15:12
side  10:22, 23
signatory  23:19, 23
Signature  25:16
Simms  3:14
simply  12:11, 22
sister  14:25
sisters  14:21  16:5
sorry  16:14  17:4
source  20:1, 10
22:7  23:13
South  1:16  2:5
3:7, 15
speak  24:6
spell  17:6
spousal  7:4  9:16
11:20  24:12
spouse  10:3, 6
11:9, 11
started  5:14  8:2

State  1:19  18:14
26:20
STATES  1:1, 3, 15
2:10
Stef  5:8
STEFAN  2:2
stenotype  26:7
storage  18:8
store  18:5  21:7
stored  18:9
Street  1:16  2:5, 13
3:7, 15
subpoena  5:11, 17
subpoenaed  24:16
Suite  2:14  3:16
SunTrust  21:19
sure  12:4  14:17
25:4
sworn  5:5  26:5
Sylvia  1:17  26:2,
18

< T >
take  8:10, 11  9:4
11:23  13:12
taken  21:5  26:3, 6,
12
talk  6:4, 14, 23
talking  11:9  12:7
17:15
Taoh  23:5, 17
T-a-o-h  23:5
tax  21:23, 25  22:8
telling  16:2
testified  5:5
testify  8:20  9:7
10:8  11:11, 14, 15
testifying  11:8
testimony  7:14
10:2  25:11  26:4, 6,
9
thank  5:9  25:13
things  9:14  12:7
think  5:9  6:20
8:16  9:1, 4, 5, 8, 14,
25  10:10, 12, 13
11:19, 24
third-party  19:2
Thirteen  13:11
three  16:6, 8

time  19:12, 16
24:11
today  5:10  6:14,
23  7:11  8:14
Tower  3:8
towns  14:19, 21
TRACEY  1:12  3:12
5:3  13:3, 8  25:17
transfer  24:1
transferred  18:23,
25  19:1  23:17
true  26:8
try  11:7
turned  21:15
turns  6:17  10:24
two  7:2  8:5  12:6
14:18  25:9
typewriting  26:7

< U >
U.S  1:15  2:4, 9
Uh-huh  8:19  10:4
14:3  16:4
understand  5:10
12:14, 16, 21  16:2
17:1  24:25
understanding  11:5
UNITED  1:1, 3, 15
2:9
use  12:17  13:15
23:23
utility  21:12

< V >
valid  9:16
value  21:7
vehicles  18:13
violation  24:22
Virginia  14:18  15:8
vs  1:5

< W >
waived  25:16
want  8:14  11:11
12:12  17:3  24:45
wanted  11:1  12:22,
23
wants  7:23  8:4
way  8:23  11:17

12:*20*  20:*8*
**WDQ-11-0540**  1:*5*
**Well**  11:*16*
**we're**  5:*15, 15, 16,*
*17*  6:*4, 9, 10, 14, 15,*
*22, 25*  9:*5*  12:*19*
**Wesley**  15:*15*
 16:*15*
**we've**  5:*9*
**whereabouts**  5:*19,*
*24*  15:*1, 2*
**witness**  5:*4*  26:*4, 6,*
*9*
**word**  11:*23*
**work**  22:*25*
**worth**  19:*18*

**< Y >**
**Yeah**  24:*8*
**years**  13:*11*