IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA       *

v.                             *
                                   CRIMINAL NO.: WDQ-11-0540
                               *
RODNEY HAILEY
                               *
TRACEY OLIVER HAILEY,          *
Petitioner.
                               *

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Rodney Hailey ("Mr. Hailey") was convicted of wire fraud, money laundering, and Clean Air Act violations, and the Court has ordered preliminary forfeiture. Mr. Hailey's wife, Tracey Oliver Hailey ("Mrs. Hailey), claims an interest in some of the forfeited property. Pending are the government's motions to compel compliance with discovery under 21 U.S.C. § 853(m), to dismiss Mrs. Hailey's claims, and to require compliance with 21 U.S.C. § 853(n)(3) and for permission to conduct discovery. For the following reasons, the motions to compel and for discovery will be granted. The motion to dismiss will be granted in part and denied in part.

I.   Background

From September 2009 to December 2010, Hailey engaged in a scheme to sell more than 32 million fake renewable credit

identification numbers through his company Clean Green Fuel. *See* ECF No. 117 at 1-2.  On June 25, 2012, a jury convicted Mr. Hailey of eight counts of wire fraud, 32 counts of money laundering, and two counts of violation of the Clean Air Act. *See* ECF No. 109.  On August 22, 2012, the Court ordered the preliminary forfeiture of 156 assets.  ECF Nos. 118, 118-1.

On October 1, 2012, the government deposed Mrs. Hailey. ECF No. 134-2.  Throughout the deposition, Mrs. Hailey objected to and did not answer many questions, claiming the spousal privilege against adverse testimony.  *See generally id.*

On October 16, 2012, Mrs. Hailey claimed an interest in several forfeited assets.  ECF No. 128; *see also* 129, 132 (amendments).  As stated by Mrs. Hailey, her claimed property interests are:

| Asset No. | Description of Property | Nature of Interest in Property | Date Interest Acquired | Circumstances of Acquisition of Interest |
|---|---|---|---|---|
| 4 | 2008 Mercedes Benz S550 VINWDDNG86XX8A203803 (Count 11)[1] | Registered Owner | 4/26/10 | Gift from Rodney Hailey |
| 8 | 2007 BMW 650IC Convertible VINWBAEK13507CN80532 (Count 14) | Registered Owner | 5/5/10 | Gift from Rodney Hailey |

---

[1] The "Count" notations reflect Mr. Hailey's money laundering convictions.  *See* ECF No. 109.

| Asset No. | Description of Property | Nature of Interest in Property | Date Interest Acquired | Circumstances of Acquisition of Interest |
|---|---|---|---|---|
| 13 | 2005 Rolls Royce Phantom VINSCA1S68455UX07532 (Count 19) | Registered Owner | 5/28/10 | Gift from Rodney Hailey |
| 14 | Real property located at 10801 Catron Road, Perry Hall, MD (Count 20) | Tenants by the Entirety with Rodney Hailey | 6/3/10 | Purchased with funds from Rodney Hailey's business |
| 19 | 2009 Ferrari F 430FB VINZFFEW58A490166292 (Count 24) | Registered Owner -Joint with Rodney Hailey | 7/20/10 | Gift from Rodney Hailey |
| 20 | Real property located at 9149 Rexis Avenue, Perry Hall, MD (Count 25) | Tenants by the Entirety with Rodney Hailey | 7/30/10 | Purchased with funds from Rodney Hailey's business |
| 23 | 2010 Maserati Quattroporte, VINZAM39JKA7A0049840 (Count 28) | Registered Owner | 8/10/10 | Gift from Rodney Hailey |
| 33 | White gold diamond ring, setting has 48 princess cut smaller diamonds (approx. 3.75 ct) with a larger diamond in the center (approx. 4.18 ct) (pp: $19,600) (Count 36) | Owner | 3/1/10 | Gift from Rodney Hailey |

| Asset No. | Description of Property | Nature of Interest in Property | Date Interest Acquired | Circumstances of Acquisition of Interest |
|---|---|---|---|---|
| 34 | Diamond bracelet, white gold with detailed clasp (pp: $12,000) (Count 37) | Owner | 8/25/10 | Gift from Rodney Hailey |
| 35 | Diamond round hoop earrings, white gold with round cut diamonds set throughout earrings (pp: $10,900) (Count 38) | Owner | 12/10/10 | Gift from Rodney Hailey |
| 36 | Diamond Three Prong "Tennis Necklace," white gold and contains single round cut stones set throughout the whole necklace (approx. 1 inch wide and 8 inches long with approx. 23.94 ct in diamonds) (pp: $26,000) (Count 39) | Owner | 12/10/10 | Gift from Rodney Hailey |
| 37 | Diamond bracelet, 25.90 ct in diamonds with 137 grams in 14kt white gold (pp: $13,000) (Count 40) | Owner | 7/31/10 | Gift from Rodney Hailey |

| Asset No. | Description of Property | Nature of Interest in Property | Date Interest Acquired | Circumstances of Acquisition of Interest |
|---|---|---|---|---|
| 57 | Funds seized from M&T Bank Account #9837373027 ($30,289.14) | Account Owner | 6/6/05 - 5/18/11 | Funds from Tracey Hailey's employment |
| 85 | Assorted Jewelry (VL: $5,292.85) | Owner of most of the items of jewelry | Various | Some items purchased by Tracey Hailey from earnings; one item gift from Rodney Hailey; other items gifts from other people |
| 86 | Assorted Disney Collectible Frame Art Work (VL: $4,559.50) | Mother and Next Friend of her minor children | February 2010 | Gifts from Rodney and Tracey Hailey to children |
| 93 | Funds seized from JP Morgan Chase Account 974934051 ($5,475.67) | Account Owner | 6/27/11 | Funds from distribution of Tracey Hailey's GDIT 401(k) Plan |
| 96 | 2005 Nissan Armada VIN5N1AA08B55N731441 | Registered Owner | 6/18/05 | Loan payments made from Tracey Hailey's earnings |
| 97 | 2003 Mercedes Benz E320 VINWDBUF65J23A328358 | Registered Owner | 12/19/06 | Loan payments made from Tracey Hailey's earnings |
| 148 | Funds seized from SunTrust Account #1000140053496 | Account Owner | 11/4/11 | Funds from 2010 income tax refunds (IRS and MD), which were based on Tracey Hailey's wages and withholding |

| Asset No. | Description of Property | Nature of Interest in Property | Date Interest Acquired | Circumstances of Acquisition of Interest |
|---|---|---|---|---|
| 152 | 1 set of Nissan Alloy rims/tires - Hankook DynaPro 265/70/18 | Owner | 6/18/05 | Rims/tires go with #96; are original equipment |
| 153 | 1 set of BMW rims/tires 255/40/ZR19 | Owner | 5/5/10 | Rims/tires go with #8; are original equipment |
| N/A | Funds seized from M&T Bank accounts in the amount of $61,655 | Owner | Various | Funds represent $61,655 from Tracey Hailey's employment (See ECF No. 116 at 2; ECF No. 117 at 3.) |

On October 26, 2012, the government moved to compel Mrs. Hailey to testify at a deposition, and filed a declaration that it would not use any of her testimony in a future criminal prosecution against Mr. Hailey. ECF Nos. 134, 134-3. On November 8, 2012, Mrs. Hailey opposed the motion, ECF No. 137, and on November 13, 2012, the government replied, ECF No. 139. Also on November 13, 2012, the government sought a final order of forfeiture on all unclaimed assets.[2] ECF No. 138

On November 19, 2012, the government moved to dismiss Mrs. Hailey's claims on Assets 4, 8, 13, 14, 19, 20, 23, 33, 34, 35, 36, 37, 86, and 153. ECF No. 141. On December 3, 2012, Mrs.

---

[2] This order was entered on February 20, 2013. ECF No. 154.

Hailey opposed, and on December 6, 2012, ECF No. 146, the government replied, ECF No. 148.

On December 4, 2012, the government sought an order compelling Mrs. Hailey to comply with 21 U.S.C. § 853(n)(3) and permitting discovery. ECF No. 147. On December 21, 2012, Mrs. Hailey responded, ECF No. 152, and on January 2, 2013, the government replied, ECF No. 153.

II.  Analysis

   A.  Motion to Compel Discovery Compliance

The government seeks to compel Mrs. Hailey's deposition testimony and production of documents under 21 U.S.C. § 853(m).[3] ECF No. 134. Mrs. Hailey claims the privilege against adverse spousal testimony. ECF No. 137; see ECF No. 134-2 (deposition transcript).

Under Fed. R. Evid. 501, the common law of privilege, as interpreted by the federal courts, remains in effect unless it conflicts with the Constitution, a federal statute, or rule. The Supreme Court has recognized the continued validity of two spousal privileges: confidential marital communications and adverse spousal testimony. See Trammel v. United States, 445

---

[3] 21 U.S.C. § 853 provides the procedures for criminal forfeiture under 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c). Section 853(m) permits the Court to order depositions "to facilitate the identification and location of property declared forfeited and to facilitate the disposition of petitions for remission or mitigation of forfeiture."

U.S. 40, 51 (1980). Mrs. Hailey asserts the latter. *See* ECF Nos. 134-2, 137. In an attempt to defeat the privilege, the government has filed a declaration that it will not use or make derivative use of any information from Mrs. Hailey's deposition in a future criminal prosecution of Mr. Hailey. ECF No. 134-3.

Under *Trammel*, the witness-spouse holds the privilege and may "refuse to testify adversely" against the defendant-spouse in a criminal proceeding.[4] *Trammel*, 445 U.S. at 53. The key dispute between the parties is whether a forfeiture proceeding is sufficiently "adverse" to allow a spouse to claim the privilege.

There appears to be a single reported decision on point: *United States v. Yerardi*, 192 F.3d 14 (1st Cir. 1999).[5] In that case, Yerardi pled guilty to racketeering and related charges,

---

[4] *Trammel* altered the rule of *Hawkins v. United States*, 358 U.S. 74 (1958), which had also permitted the defendant-spouse to invoke the privilege. *See Trammel*, 445 U.S. at 46, 53. It is not entirely clear whether the privilege may be invoked in a civil proceeding that could lead to a criminal prosecution. *See United States v. Yerardi*, 192 F.3d 14, 19 (1st Cir. 1999).

[5] The Court has found only two other cases involving this privilege in the forfeiture context; neither is analogous to this case. In *United States v. DiMichele*, Crim No. 88-00060, 1989 WL 104947 (E.D. Pa. Sept. 5, 1989), the Court permitted invocation of the privilege, but there appears to have been no attempt to immunize the defendant against further prosecution. *See id.* at *2. In *United States v. 281 Syosset Woodbury Road*, 71 F.3d 1067 (2d Cir. 1995), the court held that the privilege did not apply in a civil forfeiture case because the interest at stake was the witness's own; there was, however, a disclaimer of use against the witness's husband. *See id.* at 1071.

agreeing to forfeit $916,000. *Id.* at 16. At sentencing, he claimed "that his only asset was $5,000 worth of jewelry." *Id.* The government believed that Yerardi's wife Feghi "control[led] or kn[ew] of assets that once belonged to Yerardi but have since been forfeited to the United States." *Id.* Over Feghi's assertion of the adverse spousal testimony privilege, the district court compelled her to testify at a deposition. *Id.* at 17. Feghi refused to testify, and was held in contempt. *Id.*

On appeal, the First Circuit held that the criminal forfeiture proceeding was sufficiently criminal for potential application of the privilege. *Id.* at 19. It found that the questions the government was going to ask about the allegedly concealed assets could reasonably lead to Yerardi's prosecution "for tax evasion or related crimes." *Id.* at 20. However, the government's filing of an affidavit that it would not use or make derivative use of Feghi's testimony in a subsequent prosecution of Yerardi would eliminate the privilege. *Id.* at 20-21.[6]

The First Circuit expressed skepticism that the recovery of assets alone--without the possibility of a subsequent criminal prosecution—would be sufficiently adverse to trigger the privilege:

---

[6] *See also In re Snoonian*, 502 F.2d 110, 112-13 (1st Cir. 1974) (affidavit promising not to use grand jury testimony in prosecution of spouse overcame privilege).

> The district court assumed, and we agree, that the privilege could not be justified merely because Feghi's testimony might help the government recover former or present assets of Yerardi subject to criminal forfeiture. Yerardi had already disclaimed any interest in property, apart from his $5,000 in jewelry. Further, even if he had not, we are doubtful that the rationale of the privilege would be offended by making Feghi assist the government in locating those of Yerardi's assets subject to forfeiture if this were the only adverse consequence said to flow from the testimony.

*Id.* at 20. The *Yerardi* court likened recovery of forfeited assets to a recovery in a civil case, in which a spouse may be compelled to testify, in contrast with "the *criminal* conviction or incarceration of the other spouse." *Id.* at 20 (emphasis in original).

Mrs. Hailey asserts that helping the government recover forfeited assets, which--unlike in *Yerardi*--have not been disclaimed by Mr. Hailey, is sufficiently adverse to Mr. Hailey that she may claim the privilege. ECF No. 137 at 2. The government contends that this is the logic rejected by the First Circuit in *Yerardi*. ECF No. 139 at 3.

Like all common law privileges, the adverse spousal testimony privilege "must be strictly construed." *See Trammel*, 445 U.S. at 50. Although the exact contours of the adverse spousal testimony privilege are somewhat nebulous, *see Yerardi*, 192 F.3d at 19, its function is "to exclude evidence of criminal acts." *Trammel*, 445 U.S. at 51. Mrs. Hailey has not argued that that the location or disposition of Mr. Hailey's assets is

*per se* criminal. Further, criminal "forfeiture represents a penalty, rather than a separate criminal offense or an element of a criminal offense." *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003). The courts of appeal have also equated *in personam*[7] criminal money judgments as part of forfeiture with civil judgments for collection purposes.[8]

Construing the adverse spousal testimony privilege strictly, a criminal forfeiture proceeding is sufficiently distinct from criminal conviction and imprisonment that the privilege does not apply when the only potential consequence is the recovery of forfeited assets. *See Yerardi*, 192 F.3d at 20. The government has filed an affidavit that it will not use or make derivative use of any information from Mrs. Hailey in a future prosecution of Mr. Hailey. ECF No. 134-3. Accordingly, there is no criminal risk to Mr. Hailey from Mrs. Hailey's testimony, and the adverse spousal testimony privilege does not apply. The motion to compel will be granted.

B.  Motion to Dismiss

The government seeks dismissal of Mrs. Hailey's claims to assets 4, 8, 13, 14, 19, 20, 23, 33, 34, 35, 36, 37, 86, and

---

[7] Criminal forfeiture actions are *in personam*; civil forfeiture proceedings are *in rem* against property. *See United States v. Brunk*, 11 F. App'x 147, 150 (4th Cir. 2001) (per curiam).

[8] *See United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006); *United States v. Hall*, 434 F.3d 22, 59 (1st Cir. 2006); *United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000).

153.  ECF No. 141.  Mrs. Hailey argues that her claim in asset 4 predates the offense and presents "policy reasons" why the Court should not dismiss the others.  ECF No. 146.

Under Fed. R. Crim. P. 32.2(c)(1)(A) the Court may dismiss a petition for failure to state a claim.  The motion is treated the same as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6).  See United States v. Rosga, 864 F. Supp. 2d 439, 448-49 (E.D. Va. 2012).  Accordingly, the Court views the facts alleged by Mrs. Hailey as true, and will dismiss only if they do not plausibly demonstrate a cognizable interest in the assets sufficient to require amendment of the forfeiture order.  Id.; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); United States v. Perkins, 382 F. Supp. 2d 146, 149-50 (D. Me. 2005).

A third-party claimant is entitled to a forfeited asset only if she had an interest vested or superior to the defendant before the commission of the offense or was a bona fide purchaser for value.  See 21 U.S.C. § 853(n)(6)(A)-(B); see United States v. Oregon, 671 F.3d 484, 488 & n.1 (4th Cir. 2012).  Under 21 U.S.C. § 853(c), property interest that would have belonged to Mr. Hailey "vest[ed] in the United States upon the commission of the act giving rise to forfeiture."  All of the assets that the government seeks to dismiss, except for asset 86, were the subjects of the money laundering convictions.  See ECF Nos. 109, 132-1.

1. Asset 4

Mrs. Hailey claims to have a prior interest in Asset 4, the 2008 Mercedes Benz, because she acquired title to the vehicle on April 26, 2010; the indictment alleges that Mr. Hailey engaged in money laundering in this asset on April 27, 2010. ECF No. 146. The government asserts that the car is subject to forfeiture. ECF No. 148.

Because the car was a gift from Mr. Hailey, Mrs. Hailey cannot have acquired her interest before Mr. Hailey acquired his. Because the car was purchased with criminal proceeds, an element of the money laundering offense of which Mr. Hailey was convicted,[9] title immediately passed to the United States upon purchase.[10] Mr. Hailey never had an interest that he could give to Mrs. Hailey. Because Mrs. Hailey has not claimed to be a bona fide purchaser for value, and she does not have a superior interest to the United States, her claim to Asset 4 fails as a matter of law. Cf. 21 U.S.C. § 853(n)(6)(A)-(B).

---

[9] See 18 U.S.C. § 1957(a).

[10] See 21 U.S.C. § 853(c); United States v. Hooper, 229 F.3d 818, 821-22 (9th Cir. 2000); United States v. Brewer, 591 F. Supp. 2d 864, 868-69 (N.D. Tex. 2008); United States v. Brown, 509 F. Supp. 2d 1239, 1244-1245 (M.D. Fla. 2007). Simplifying the analysis, Maryland is not a community property state. See Harper v. Harper, 448 A.2d 916, 928 (Md. 1982).

2.   Asset 86

The government seeks dismissal of Mrs. Hailey's claim to Asset 86, "Assorted Disney Collectible Frame Art Work," because it is a substitute asset under 21 U.S.C. § 853(p).[11] The Court has found that asset 86 is a substitute asset because the majority of the proceeds from Mr. Hailey's fraud have been transferred to third parties. See ECF No. 117 at 10.

The government asserts that under the relation back doctrine,[12] the government's title vested in the substitute asset as of the date giving rise to the offense. ECF No. 141 at 8.

Mrs. Hailey claims that she acquired an interest in the Disney artwork as mother and next friend of her children in February 2010. ECF No. 132-1 at 2. She claims that the items were "Gifts from Rodney and Tracey Hailey to children." ECF No. 132-1. The portions of the asset attributable to Mr. Hailey's gifts are tainted as substitute assets because February 2010 is

---

[11] The government traces this property to the wire fraud. See ECF No. 141 at 6-8. Under the statutory scheme in Title 18, the proceeds of wire fraud are subject to civil forfeiture. See 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. §§ 1956(c)(7)(A), 1961(1) (listing § 1343 for civil forfeiture). However, 28 U.S.C. § 2461(c) mandates the conversion of civil forfeiture to criminal forfeiture when notice is provided in the indictment. See United States v. Alamoudi, 452 F.3d 310, 313-14 (4th Cir. 2006); see also ECF No. 19 at 17 (indictment).

[12] Under this doctrine, the taint on the substitute asset arises and relates back to the date of the acts giving rise to the forfeiture, as it would for the original asset. See United States v. McHan, 345 F.3d 262, 271-72 (4th Cir. 2003).

after the beginning of the wire fraud scheme. *See United States v. Capoccia*, 503 F.3d 103, 117-18 (2d Cir. 2007); *McHan*, 345 F.3d at 271-72. However, Mrs. Hailey may have purchased some portions of the collection, leading to a vested interest separate from Mr. Hailey's in at least part of the asset. Because Mrs. Hailey may be entitled to a portion of the artwork, the motion will be denied as to Asset 86.[13]

3. Remaining Assets

The government argues that Mrs. Hailey cannot show that she obtained an interest in the remaining assets before Mr. Hailey purchased them with the proceeds of the crime. ECF No. 141. Mrs. Hailey opposes the motion on policy grounds. *See* ECF No. 146.

a. Substantive Arguments

The jury found beyond a reasonable doubt that all the assets for which dismissal is sought, except Asset 86, were purchased through laundering the proceeds of Mr. Hailey's crimes. *See* ECF No. 109. Mrs. Hailey claims an interest because the items were either a gift from Mr. Hailey or purchased with funds from his business. *See* ECF No. 132-1. Because the jury found that each of these assets was obtained through money laundering, neither Mr. nor Mrs. Hailey ever

---

[13] Mrs. Hailey should amend the petition to provide greater detail about the purchase of the artwork. *See infra*, Part II.C.

obtained an interest; title vested in the government upon commission of the offense.[14] Accordingly, Mrs. Hailey has not alleged a preexisting or superior interest or bona fide purchaser status for those assets.

### b. Policy Arguments

Mrs. Hailey makes two policy arguments against granting the motion to dismiss: (1) it would deny her a hearing regarding these assets, and (2) would not result in judicial economy. ECF No. 146 at 3. The government asserts that dismissal without a hearing is the purpose of Rule 32.2(c)(1)(A) and that a hearing soon on the other assets is unlikely. ECF No. 148 at 4-5.

Mrs. Hailey is correct that granting the motion to dismiss would deprive her of a hearing on these assets. However, this is the procedure contemplated by Fed. R. Crim. P. 32.2(c)(1)(A). The purpose of a motion to dismiss is to remove claims that, even assuming all alleged facts as true, are not a basis for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007). Because Mrs. Hailey cannot succeed on the merits on the facts alleged, there is no reason for a hearing. *See United States v. BCCI Holdings (Luxembourg), S.A.*, 919 F. Supp. 31, 36 (D.D.C. 1996).

---

[14] *See Hooper*, 229 F.3d at 821-22; *Brewer*, 591 F. Supp. 2d at 868-69; *Brown*, 509 F. Supp. 2d at 1244-1245.

Further, judicial economy will be served by not holding a hearing on these assets. The assets may be sold sooner enabling the government access to forfeited funds. An eventual hearing will be shorter and less complex. Accordingly, there is no policy reason to refrain from granting the motion. The government's motion will be granted, except as to Asset 86.

C.   Motion to Compel and for Discovery

The United States asks the Court to compel Mrs. Hailey to comply with the pleading requirements of 21 U.S.C. § 853(n)(3) and for permission to conduct discovery. ECF No. 147. Mrs. Hailey asserts that her petition is compliant; she does not appear to oppose the discovery request. ECF No. 152.

1.   Pleading Requirements

A petition for a third party interest in forfeited property must

> set forth the nature and extent of the petitioner's right, title or interest in the property, the time and circumstances of the right, title or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

21 U.S.C. § 853(n)(3). The government contends that Mrs. Hailey has not provided sufficient information about her claims to justify her continued ownership and has not stated whether she seeks them as holder of a superior interest or as a bona fide purchaser for value. ECF No. 147; *see* 21 U.S.C. § 853(n)(6)(A)-

(B). Mrs. Hailey asserts that she has met the requirements of § 853(n)(3).[15] ECF No. 152 at 2.

Although the statute is not entirely clear, the availability of a motion to dismiss indicates that to state a claim, one of the § 853(n)(6) bases must be pled.[16] A motion to dismiss would have little utility if the petitioner were not required to plead enough facts to show entitlement to relief.

Conclusionary allegations of ownership and purchase with funds from employment is insufficient under § 853(n)(3). See *United States v. Ginn*, 799 F. Supp. 2d 645, 647 (E.D. La. 2010). "[T]he law requires more than a bare assertion of legal title to establish the nature and extent of petitioner's right, title or interest in the subject property." *United States v. Edwards*, Crim. No. 06-50127-01, 2007 WL 2088608, at *2 (W.D. La. July 20, 2007).

Mrs. Hailey has not adequately stated the nature of the interest that she claims in the property. She claims that several assets derive from her employment, but she does not

---

[15] She also appears to assert that the government has sufficient notice of her claims; because of "the government's extensive knowledge of the Haileys' affairs," it "should be well aware of the sources of funds at issue." ECF No. 152 at 2.

[16] See *Perkins*, 382 F. Supp. 2d at 149-50; *United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. 1276, 1282 (D.D.C. 1996) (under the substantively identical 18 U.S.C. § 1963(l)); see also *Oregon*, 671 F.3d at 488 (stating that the second step after a petition is resolving motions to dismiss).

specify what that employment is or whether it is connected with Mr. Hailey's offenses (thus, potentially making those assets subject to forfeiture). See ECF No. 132-1. Similarly, she has not alleged whether she seeks recovery under § 853(n)(6)(A) or (B). Cf. id.

Rather than seek dismissal for these deficiencies, the government seeks clarification of the petition. See ECF No. 147. Amendment will simplify the Court's inquiry at a hearing and will provide clearer guidance for what discovery is needed. Accordingly, Mrs. Hailey will be ordered to amend her petition to fully state how she gained her interest in the property, particularly the nature of her employment, whether she is seeking relief under § 853(n)(6)(A) or (B),[17] and any other details necessary to meet the standards of 21 U.S.C. § 853(n).[18]

---

[17] The Court notes that Mrs. Hailey implies that she is not seeking relief as a bona fide purchaser for value. ECF No. 152 at 3. She should, however, make her theory of recovery explicit in the petition.

[18] The Court acknowledges that Mrs. Hailey may not have the information available to fully describe her interest in the property, specifically Asset 85, "miscellaneous jewelry," for which the government has not provided a thorough description. To the extent that Mrs. Hailey is unable to determine what jewelry the government has seized, the description in her second amended schedule will suffice. See ECF No. 132-1.

2. Discovery

The government seeks discovery about the assets claimed by Mrs. Hailey. ECF No. 147. Mrs. Hailey has acknowledged the potential utility of discovery. ECF No. 152 at 4.

Under Fed. R. Crim. P. 32.2(c)(1)(B), the Court may order discovery if it "determines that discovery is necessary or desirable to resolve factual issues." Here it appears that there are factual issues to be resolved regarding the source of funds to Mrs. Hailey and the provenance of the Disney artwork. It is desirable that evidence on these issues be disclosed via discovery before a hearing. After Mrs. Hailey has amended her petition, the parties will be permitted to conduct discovery under the Federal Rules of Civil Procedure. The government's motion will be granted.

III. Conclusion

For the reasons stated above, the government's motions to compel and for discovery will be granted. The motion to dismiss will be granted in part and denied in part.

2/20/13
Date

_____
William D. Quarles, Jr.
United States District Judge